IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

| | |
|---|---|
| WILKES & MCHUGH, P.A.; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:10-cv-02824 |
| | ) Jury Demanded |
| CAROLINA CASUALTY INSURANCE COMPANY; | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Wilkes & McHugh, P.A., and complains of Carolina Casualty Insurance Company, Defendant, and for this cause of action would show as follows:

### PARTIES

1. Plaintiff Wilkes & McHugh, P.A. ("Wilkes & McHugh") is a professional association incorporated under the laws of the State of Florida. Wilkes & McHugh maintains its principal place of business at One North Dale Mabry Highway, Suite 800, Tampa, Florida 33609, and conducts business in Tennessee. Wilkes & McHugh maintains an office located at 60 South Main Street, Suite 101, Memphis, Tennessee 38103.

2. Defendant Carolina Casualty Insurance Company ("Carolina Casualty") is a foreign corporation incorporated under the laws of Iowa. Carolina Casualty maintains its principal place of business in Florida at 4600 Touchton Road East, Building 100, Suite 400, Jacksonville, Florida 32246, and conducts business in Tennessee. Carolina Casualty may be

served with process through its registered agent for service of process, John P. Thelen, 11201 Douglas Ave., Urbandale, IA 50322.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and is between citizens of different states.

4. Pursuant to 28 U.S.C. § 1391(a), venue is appropriate in this Court because a substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTS

5. Carolina Casualty issued a Lawyers' Professional Liability Insurance policy ("Policy") to Wilkes & McHugh, policy number 9831409, for a policy period of March 24, 2008 to March 24, 2009. A true and accurate copy of Policy No. 9831409, including its declarations, is attached hereto as **Exhibit 1**.

6. Monitor Liability and its employee, Brent Rawlings, CPCU, RPLU, were agents of Carolina Casualty and served as Carolina Casualty's claims adjusters during the above Policy period. *See* Exhibit 1, p. 1 of Declarations Page.

7. Plaintiff Wilkes & McHugh, along with attorneys Timothy C. McHugh and James L. Wilkes, II ("Insureds"), are insureds under the Policy. *Id.* at Section III. E.

8. The limit of liability of the Policy is $5,000,000 for each claim and $5,000,000 in the aggregate, with $100,000 deductible. *Id.* at Declarations Page, p. 1.

9. In accordance with the terms of the Policy, Plaintiff Wilkes & McHugh paid all premiums required under the Policy.

10. Plaintiff Wilkes & McHugh paid or otherwise met its deductible of $100,000.

11. The Policy's Insuring Agreement provides:

2

>This Policy shall pay on behalf of the Insured all Damages and Claims Expense that the Insureds shall become legally obligated to pay, arising from any Claim first made against an Insured during the Policy Period and reported to the Insurer in writing during the Policy Period or within 60 days thereafter, for any Wrongful Act, provided that prior to the inception date of the first Lawyers' Professional Liability Insurance Policy issued by the Insurer to the Named Insured, which ahs been continuously renewed and maintained in effect to the inception of this Policy Period, the Insured did not know, or could not reasonably foresee that such Wrongful Act might reasonably be expected to be the basis of a Claim.

>*Id.* at p. 1, § I.

12. The Policy defines "Claim" as:

>[A] written demand for monetary or non-monetary relief including, but not limited to, a civil, criminal, administrative or arbitration proceeding; provided, however, that Claim shall not include any proceedings before a state licensing board or similar authority, except as otherwise provided in section V. Supplemental Coverages, of this Policy. A Claim shall be deemed to have been first made at the time notice of the Claim is first received by any Insured.

13. The Policy defines "Claims Expense" as:

>[R]easonable and necessary fees, costs and expenses (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries, wages, overhead or benefit expenses associated with any Insured, or any amount covered by the duty to defend obligation of any other insurer.

>*Id.* at p. 2, § III(B).

14. On January 9, 2009, Nolan Ryan, Esq., attorney for Wilkes & McHugh's former client, Terry Sullivan, wrote attorneys for Wilkes & McHugh to advise them of the potential claim of Mr. Sullivan against Wilkes & McHugh. *See* Correspondence from Attorney Nolan, attached hereto as **Exhibit 2**. On January 22, 2009, Terry Sullivan filed a lawsuit ("Claim") against Wilkes & McHugh in Circuit Court of Hickman County, Tennessee, asserting claims of professional negligence, illegal fee agreement, breach of fiduciary duty, and violations of the Tennessee Consumer Protection Act, as well as a claim for punitive damages.

15. In accordance with the terms of the policy, Plaintiff Wilkes & McHugh timely reported the Claim to Defendants Carolina Casualty and Monitor Liability during the claims period under the policy and met all conditions precedent as detailed in the Policy. *See* Correspondence from Monitor Liability acknowledging that written notice of the claim was received on January 14, 2009, attached hereto as **Exhibit 3**.

16. Defendants Carolina Casualty and Monitor Liability had a duty to comply with all of the terms and conditions of the Policy.

17. Defendants Carolina Casualty and Monitor Liability owed its Insureds a fiduciary duty to act at all times in good faith.

18. Under the Policy, Defendants Carolina Casualty and Monitor Liability had a duty "to pay on behalf of the Insured all Damages and Claims Expense" to defend against the Claim. *See* Exhibit 1, p. 1, § I.

19. This duty included the duty to pay Plaintiff's attorneys fees incurred with the defense of the Claim, as the Policy provides that covered claims expenses include "reasonable and necessary fees, costs and expenses ... resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds." *Id.* at p. 2, § III(B).

20. Defendants Carolina Casualty and Monitor Liability initially retained Dale Tuttle, Esq., of Glassman, Edwards, Wade & Wyatt, P.C., to defend Plaintiff Wilkes & McHugh and the Insureds against the Claim. *See* Exhibit 3.

21. The action filed by Mr. Sullivan, which was ultimately before two (2) different Williamson County judges, proved to be extremely complex, involving multiple parties, numerous causes of action, and issues of first impression under Tennessee law.

4

22. Mr. Sullivan had three (3) different law firms working on his behalf, including Mr. Nolan and two legal experts and their Firms, who engaged in aggressive discovery tactics, including the filing of multiple motions to compel and for sanctions.

23. Discovery depositions of multiple fact witnesses, expert witnesses, and apex officers were requested and conducted.

24. More than one hundred (100) pleadings were filed in the underlying Claim.

25. As the Claim alleged professional legal malpractice, an examination and re-trial of the underlying case was involved.

26. The file alone in the underlying case that was the basis for the Claim at issue was comprised of sixty-seven (67) banker's boxes.

27. Issues in the underlying case had been successfully appealed by the Plaintiff to the Tennessee Supreme Court prior to the lengthy trial of the underlying case.

28. The trial of the underlying case lasted two weeks and involved the presentation of twenty-two (22) live witnesses, including experts.

29. The litigation with Mr. Sullivan and his team of lawyers in defending the Claim became increasingly complex, requiring the assistance of more than one attorney to provide an adequate defense.

30. Due to the inherent complexity of the case and the gravity of the allegations, Mr. Tuttle, attorney for Plaintiff, recognized that additional counsel would be necessary to provide a meaningful and adequate defense to the Claim.

31. Pursuant to the terms of the Policy, Counsel for Plaintiff Wilkes & McHugh requested the consent of Defendant Carolina Casualty through its agent, Monitor Liability, to employ additional counsel, Phil Elbert, Esq., and his Firm, Neal & Harwell, PLC, to assist in the

5

defense of the Claim. *See* Correspondence from Dale Tuttle, dated January 11, 2010, attached hereto as **Exhibit 4**.

32. Prior to Mr. Tuttle's letter of January 11, 2010, Mr. Tuttle contacted Defendant's agent and claims adjuster, Brent Rawlings, multiple times and informed him of the necessity of the retention of Mr. Elbert and his Firm's services to defend Plaintiff against the Claim. *See* Correspondence from James R. Freeman dated March 22, 2010, attached hereto as **Exhibit 5**.

33. Defendant Carolina Casualty and its agent, Monitor Liability, were aware of the involvement of Mr. Elbert and his Firm, Neal & Harwell, PLC, in the case on Plaintiff's behalf as early as December 4, 2009. *See* Exhibit 5.

34. The Policy provides that Defendant's consent to incur additional claims expenses, including attorneys' fees and costs to defend the underlying Claim, "shall not be unreasonably withheld, provided that the Insurer shall be entitled to full information and all particulars it may request in order to reach a decision regarding such consent." *See* Exhibit 1, p. 5, § VI(A).

35. In accordance with the terms of the Policy, Mr. Tuttle and Plaintiff provided Defendant Carolina Casualty and its agents, Monitor Liability and Brent Rawlings, with full information and all particulars detailing Mr. Elbert's experience and expertise in the defense of legal malpractice claims such as the Claim against Plaintiff.

36. Mr. Elbert has twenty-nine (29) years of civil litigation experience and has been a member of the law firm, Neal & Harwell, PLC, since 1981.

37. Mr. Elbert graduated Washington University in 1978 with a double major in History and Economics, and obtained his Juris Doctorate degree from Vanderbilt University in 1981.

38. Mr. Elbert and his Firm, Neal & Harwell, PLC, are experienced in the defense of complex litigation, such as the Claim and underlying case in the present matter.

6

39. Mr. Elbert has practiced extensively in the area of civil trial litigation throughout Middle Tennessee, and thus is very familiar with the venue, judges, and attorneys involved in the Claim.

40. Mr. Elbert and his law firm, Neal & Harwell, PLC, are centrally located, which was of great assistance to Plaintiff, as the underlying case and Claim were based out of Centerville, Tennessee.

41. Mr. Elbert's firm, Neal & Harwell, PLC, is comprised of over thirty (30) lawyers and has a large support staff, the resources of which were invaluable to the Plaintiff in the defense of the Claim, especially considering the aggressive discovery tactics taken by opposing counsel in the Claim.

42. Mr. Elbert had prior experience in representing the Plaintiff in the past and, thus, was familiar with and knowledgeable of the Plaintiff, such that Mr. Elbert's involvement was essential to mounting an appropriate and adequate defense to the Claim.

43. Only after Mr. Elbert and his Firm, Neal & Harwell, PLC, began defending Plaintiff against the Claim, was the Claim mediated and resolved.

44. Solely due to cost considerations, Defendant Carolina Casualty unreasonably withheld consent and, in bad faith, denied Plaintiff's request for additional counsel, Mr. Elbert and his Firm, Neal & Harwell, PLC. *See* Correspondence from Brent Rawlings, dated March 24, 2010, attached hereto as **Exhibit 6**.

45. Believing that the services of Mr. Elbert and his Firm, Neal & Harwell, PLC, were absolutely necessary and invaluable to mount an appropriate defense to the Claim, Plaintiff Wilkes & McHugh retained Mr. Elbert and his Firm, Neal & Harwell, PLC, to defend them against the Claim, despite Defendant's bad faith denial of Plaintiff's request for additional counsel.

7

46. Plaintiff agreed to pay Mr. Elbert and his Firm reasonable attorneys' fees and costs consistent with Mr. Elbert's and his Firm, Neal & Harwell's skill level and expertise.

47. Defendant Carolina Casualty and its agent, Monitor Liability, have been provided copies of the legal fee bills and expenses incurred in the defense of the underlying Claim and continue to refuse to pay the reasonable and necessary attorney's fees and expenses to Mr. Elbert and his Firm, Neal & Harwell, PLC, in violation of their duty to defend.

48. Defendant Carolina Casualty breached the terms of the Policy by its refusal to pay Plaintiff's reasonable and necessary attorney's fees incurred in the defense of the Claim.

49. As a direct and proximate result of Defendant's breach of the Policy, to date, Plaintiff has incurred attorney's fees and costs by Mr. Elbert and his Firm, Neal & Harwell, PLC, in the defense of the Claim in the amount of $225,752.71, which remain outstanding and owing to Mr. Elbert and his firm, Neal & Harwell, PLC. *See* Invoice from Phil Elbert dated October 11, 2010, attached hereto as **Exhibit 7**.

## CAUSES OF ACTION

### I. BREACH OF CONTRACT

50. Plaintiff re-alleges and incorporates the allegations in paragraphs 1-49 as if fully set forth herein.

51. Pursuant to the terms and conditions of the Policy, Defendant Carolina Casualty owed a duty to pay for Claims Expenses, including reasonable and necessary attorneys' fees incurred in the defense of the Plaintiff and the Insureds in the underlying Claim.

52. Defendant Carolina Casualty breached the terms of the Policy in its refusal to pay the attorney's fees and expenses of Mr. Elbert and his Firm, Neal & Harwell, PLC, incurred by Plaintiff in the defense of Plaintiff in the underlying Claim.

53. As a result of Defendant's material breach of contract as set forth above, Plaintiff incurred damages in the amount of $225,752.71, and is entitled to a judgment in its favor finding that Defendant owes a duty under the Policy and are required to pay for the foregoing attorney's fees and costs incurred in the defense of Plaintiff and the named Insureds in the underlying Claim.

54. Plaintiff additionally seeks damages, including prejudgment interest, attorneys' fees, expenses, all damages pursuant to Tenn. Code Ann. § 56-7-105 and the Tennessee Consumer Protection Act as set forth below, all damages available under the Policy, and any additional relief the Court deems necessary or a jury determines.

## II. VIOLATION OF TENNESSEE CODE ANNOTATED § 56-7-105, BAD FAITH PENALTY CLAIM

55. Plaintiff re-alleges and incorporates the allegations in paragraphs 1-54 as if fully set forth herein.

56. Pursuant to Tenn. Code Ann. §§ 56-8-101 *et seq.*, Defendant Carolina Casualty is prohibited from unfair trade practices, including the bad faith denial of a claim by an insured.

57. Tennessee Code Annotated § 56-7-105 expressly provides a private right of action to insureds injured by an insurance company's refusal to pay a claim if the refusal was in bad faith.

58. In the present action, Plaintiff demanded that Defendant Carolina Casualty pay Plaintiff's claim for the reasonable and necessary attorney's fees and expenses of additional counsel incurred in the defense of Plaintiff in the underlying claim.

59. Defendant Carolina Casualty denied Plaintiff's claim for payment of the reasonable and necessary attorney's fees and expenses of additional counsel in bad faith.

60. Plaintiff's request for additional counsel was reasonable and appropriate in light of the complexity of the litigation involved in the underlying Claim, as set forth above.

61. Plaintiff acted in good faith in its request for additional counsel, by providing Defendant with Mr. Elbert's qualifications and seeking oral and written permission to obtain said counsel.

62. Defendant Carolina Casualty and its agent, Monitor Liability, were aware that Plaintiff retained additional counsel as early as December 4, 2009, but failed to inform Plaintiff until March 24, 2010, that Defendant was denying Plaintiff's claim for additional counsel.

63. By the time Plaintiff learned of Defendant's denial of Plaintiff's claim for additional counsel, Plaintiff had incurred significant charges, fees, and expenses of Mr. Elbert and his Firm, Neal & Harwell, PLC.

64. More than 60 days have passed since Plaintiff demanded payment of the claim for the attorney's fees and expenses of Mr. Elbert and his Firm, Neal & Harwell, PLC, and Defendant is still refusing to pay the claim.

65. Due to Defendant's bad faith denial of Plaintiff's claim for payment of the fees and expenses of additional counsel, Plaintiff has incurred damages in the amount of $225,752.71.

66. Plaintiff has incurred additional damages due to Defendant's bad faith refusal of Plaintiff's claim, and additionally seeks all damages and remedies available under Tenn. Code Ann. § 56-7-105, in addition to the actual loss incurred, including, but not limited to, a sum of twenty-five percent (25%) on the liability for the loss under the Policy; additional expense, loss, and injury including attorney's fees; and any additional the Court deems necessary or a jury determines.

### III. VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN. § 47-18-101, *ET SEQ.*

67. Plaintiff re-alleges and incorporates the allegations in paragraphs 1-66 as if fully set forth herein.

68. At all times material herein, Plaintiff has paid and Defendant Carolina Casualty has accepted premiums for the Policy.

69. The acts and practices of Defendant Carolina Casualty, as an insurance company, is subject to the provisions of the Tennessee Consumer Protection Act (TCPA), codified at § 47-18-101, *et seq.*, and its sale of the Policy to Plaintiff constitutes trade and commerce under the TCPA.

70. Accordingly, Defendant Carolina Casualty and its agents were required to comply with the provisions of the TCPA in their business dealings with Plaintiff and the Insureds.

71. In bad faith and despite its contractual obligations under the Policy, Defendant Carolina Casualty willfully and knowingly refused and continues to refuse to pay for the defense of the underlying Claim, notwithstanding Plaintiff's timely and reasonable request for the retention and payment of the services of additional counsel, Phil Elbert and his Firm, Neal & Harwell.

72. The willful, knowing, and intentional actions and inactions of Defendant Carolina Casualty and its agents as set forth above during their claims handling of the subject defense of the underlying claim constitute unfair or deceptive acts or practices pursuant to Tenn. Code Ann. § 47-18-104(b).

73. As a result of the above described unfair or deceptive acts or practices committed by Defendant, Plaintiff has suffered damages, including, but not limited to, the costs of the

retention of additional counsel to defend the underlying Claim, as well as the costs associated with bringing the present action.

74. Plaintiff further requests its reasonable attorneys' fees and costs pursuant to Tenn. Code Ann. § 47-18-109(e)(1). In addition, because Defendant's violations were willful, knowing, and intentional, Plaintiff seeks treble damages pursuant to Tenn. Code Ann. § 47-18-109(a)(3), or alternatively, under Tennessee common law, Plaintiff seeks punitive damages against Defendant, whichever is determined to be greater by the trier-of-fact.

## REQUEST FOR A TRIAL BY JURY

75. Plaintiff demands a trial by jury on all issues herein set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment against Defendant as follows:

1. For damages to be determined by a jury, in an amount exceeding the minimum jurisdictional amount of the Court, and adequate to compensate Plaintiff for all of the injuries and damages sustained;

2. For all general and special damages caused by the conduct of Defendant;

3. For the costs and attorneys' fees for litigating the present action;

4. For all relief available to Plaintiff pursuant to Tenn. Code Ann. § 56-7-105, including but not limited to, the actual loss incurred; a sum of twenty-five percent (25%) on the liability for the loss under the Policy; additional expense, loss, and injury including attorney's fees; and any additional the Court deems necessary or a jury determines;

5. For all relief available to Plaintiff pursuant to the Tennessee Consumer Protection Act, codified at § 47-18-101, *et seq.*, including but not limited to the actual loss

incurred, attorneys' fees, costs, and treble damages, as Defendant's violations of the TCPA were willful, knowing, and intentional;

6. For punitive damages sufficient to punish Defendant for its egregious conduct and to deter Defendant from repeating such conduct in bad faith; and

7. For all other relief to which the Plaintiff is entitled by law.

Respectfully submitted,

By: */s/ Carey L. Acerra*
Carey L. Acerra, Esq. (TN BPR #23464)
WILKES & McHUGH, P.A.
60 South Main St., Suite 101
Memphis, Tennessee 38103
(office) 901-322-4232
(facsimile) 901-322-4231
(email) cacerra@wilkesmchugh.com

*Attorneys for Plaintiff*